UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-62600-CIV-COHN/SELTZER

PANKAJ PATEL and LAKETHA WILSON, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

SPECIALIZED LOAN SERVICING LLC, and AMERICAN SECURITY INSURANCE COMPANY,

Defendants.
______________________________/

**ORDER GRANTING MOTIONS TO DISMISS**

**THIS CAUSE** is before the Court upon Defendant American Security Insurance Company's Motion to Dismiss [DE 22] and Defendant Specialized Loan Servicing LLC's Motion to Dismiss Complaint [DE 24] (collectively, "Motions"). The Court has reviewed the Motions, Plaintiffs' Responses [DE 26 & 27], Defendants' Replies [DE 28 & 29], and the record in this case, and is otherwise advised in the premises. For the reasons discussed below, the Court will grant the Motions.

## I. BACKGROUND

Plaintiffs Pankaj Patel and Laketha Wilson, on behalf of themselves and all others similarly situated, commenced this action on December 10, 2015, against Defendants Specialized Loan Servicing, LLC ("SLS") and American Security Insurance

Company ("ASIC").[1] See DE 1. SLS is a mortgage servicer and collections entity. Id. ¶ 18. The standard form mortgage agreements owned or serviced by SLS include a provision requiring the borrower to maintain hazard insurance, wind insurance, and in some instances, flood insurance. Id. ¶ 25. If the borrower allows the insurance coverage to lapse, the standard mortgage terms permit the lender to "force place" insurance to protect its interest in the property and charge the premiums to the borrower, rather than declare the borrower in default. Id. ¶¶ 25, 49, 62.

Although it was not disclosed in the mortgage agreements, SLS had an exclusive arrangement with ASIC and its affiliates to provide the forced placed insurance ("FPI") and mortgage servicing functions. Id. ¶¶ 26–28. The gravamen of Plaintiffs' Complaint is that SLS, in collaboration with ASIC, charged borrowers inflated or excess FPI premiums. Specifically, Plaintiffs claim that SLS received "kickbacks" in the form of unearned commissions and expense reimbursements, "illusory reinsurance," and discounted mortgage servicing functions. Id. ¶ 5. SLS did not pass these savings on to the borrowers, and therefore, Plaintiffs claim that they were improperly charged more than SLS actually paid to secure the lenders' interest in the property.

The Complaint asserts nine counts: Count I: Breach of Contract (against SLS); Count II: Breach of Implied Covenant of Good Faith and Fair Dealing (against SLS); Count III: Unjust Enrichment (against SLS); Count IV: Unjust Enrichment (against ASIC); Count V: Tortious Interference with a Contract or Advantageous Business Relationship (against ASIC); Count VI: Violations of the Federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq. (against SLS); Count VII: Violations of the Racketeer

[1] "[A] judge ruling on a defendant's motion to dismiss a complaint 'must accept as true all of the factual allegations contained in the complaint.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572 (2007) (citations omitted).

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (against all Defendants); Count VIII: Violations of RICO, 18 U.S.C. § 1962(d) (against all Defendants); and Count IX: Violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (against SLS).

Defendants argue in the instant Motions that the filed-rate doctrine precludes Plaintiffs' claims because it is undisputed that all of the rates billed to borrowers were approved by Florida's Office of Insurance Regulation ("OIR"). Alternatively, Defendants contend that each of Plaintiffs' claims should be dismissed for failure to state a claim upon which relief may be granted.

## II. PRELIMINARY ISSUES

As an initial matter, the Court must consider whether the filed-rate doctrine is a challenge to the Court's subject matter jurisdiction or a defense on the merits. The Court recognizes that disagreement on this issue exists among federal courts, even those within this Circuit. However, the Court agrees with the weight of recent authority that a filed-rate argument should be treated as a defense on the merits, rather than an issue of standing. See, e.g., Lyons v. Litton Loan Servicing LP, No. 113CV513ALCGWG, 2016 WL 415165, at *5 (S.D.N.Y. Feb. 2, 2016) ("[T]his Court will analyze [Defendant's] filed rate doctrine claims under Rule 12(b)(6)"); Wilson v. EverBank, N.A., 77 F. Supp. 3d 1202, 1233 n.6 (S.D. Fla. 2015) (analyzing filed-rate arguments under Rule 12(b)(6)); Hoover v. HSBC Mortg. Corp. (USA), 9 F. Supp. 3d 223, 237 (N.D.N.Y. 2014) ("[F]iled rate argument is a defense on the merits, rather than a challenge to subject matter jurisdiction."); Perryman v. Litton Loan Servicing, LP, No. 14-cv-02261, 2014 WL 4954674, at *6 (N.D. Cal. Oct. 1, 2014) (noting, without ruling on

the issue, that the weight of recent authority considers the filed-rate doctrine a defense on the merits, not a jurisdictional challenge); Curtis v. Cenlar FSB, No. 13 Civ. 3007, 2013 WL 5995582, at *2 (S.D.N.Y. Nov. 12, 2013) (finding filed-rate doctrine a merits issue because "defendants are not contending that [the plaintiff] is the wrong individual to bring these legal claims; they are arguing that the claims are simply not legally cognizable"); Roberts v. Wells Fargo Bank, No. 4:12-CV-200, 2013 WL 1233268, at *9 (S.D. Ga. Mar. 27, 2013) ("[T]he Court finds it prudent to address the filed rate doctrine in the context of a 12(b)(6) motion"); but see Morales v. Attorneys' Title Ins. Fund, Inc., 983 F. Supp. 1418, 1429 (S.D. Fla. 1997) ("At the core of the filed rate doctrine is the issue of standing."). Accordingly, the Court will evaluate Defendants' filed-rate arguments under Federal Rule of Civil Procedure Rule 12(b)(6).

Because the Court does not construe the filed-rate doctrine as a challenge to its subject matter jurisdiction, it will not consider the declarations and supporting evidence attached to ASIC's Motion for the purpose of a Rule 12(b)(1) analysis. Nor will the Court consider the declaration that Plaintiffs submitted in response to ASIC's supporting declarations for that purpose. See DE 33.

However, "[a] district court may take judicial notice of facts capable of accurate and ready determination by using sources whose accuracy cannot reasonably be questioned, including public records." Chinn v. PNC Bank, N.A., 451 Fed. App'x. 859, 860 n.1 (11th Cir. 2012). The Court therefore takes judicial notice of ASIC's exhibits documenting OIR's approval of ASIC's premium rates in Florida, as these documents are a matter of public record. See DE 22-7, DE 22-13, and DE 22-15 through DE 22-

18; see also Trevathan v. Select Portfolio Servicing, Inc., No. 15-61175-CIV, 2015 WL 6913144, at *2 (S.D. Fla. Nov. 6, 2015) (taking judicial notice of similar exhibits).

## III. LEGAL STANDARD

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long Cty., 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn in favor of the plaintiff. St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a Rule 12(b)(6) motion to dismiss, the complaint "does not need detailed factual allegations"; however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. The plaintiff must plead enough facts to "state a claim that is plausible on its face." Id. at 570.

## IV. DISCUSSION

"The filed rate doctrine (also known as the 'filed tariff doctrine') 'forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority.'" Hill v. BellSouth Telecommc'ns, Inc., 364 F.3d 1308, 1315 (11th Cir. 2004) (quoting Ark. La. Gas Co. v. Hall, 453 U.S. 571, 577

(1981)). "Therefore, causes of action in which the plaintiff attempts to challenge the terms of a filed tariff are barred by the filed rate doctrine." Id. Moreover, "even if a claim does not directly attack the filed rate, an award of damages to the customer that would, in effect, result in a judicial determination of the reasonableness of that rate is prohibited under the filed rate doctrine." Id. at 1317.

The doctrine is grounded in two rationales: nonjusticiability and nondiscrimination. Id. at 1316. The nonjusticiability principle maintains that courts should not undermine the rate-making authority of an agency by upsetting the rates that it has approved. Rothstein v. Balboa Ins. Co., 794 F.3d 256, 261 (2d Cir. 2015) (citations omitted). The nondiscrimination principle holds that "litigation should not become a means for certain ratepayers to obtain preferential rates." Id. The fact that plaintiffs bring an action on behalf of a putative class does not alleviate nondiscrimination concerns. Trevathan, 2015 WL 6913144, at *3 n.4 (citing Rothstein, 794 F.3d at 263). If a ratepayer's claim against a rate filer would offend either the nonjusticiability or nondiscrimination principles, the claim is barred. Rothstein, 794 F.3d at 262.

The Court acknowledges that there is conflict of authority as to whether the filed-rate doctrine bars borrowers' challenges to excess or inflated premiums where lenders or mortgage servicers forced placed insurance and passed the costs on to the borrowers. The Eleventh Circuit has not addressed this specific issue. However, the Second Circuit recently held in Rothstein, that the filed-rate doctrine precludes such claims, at least when asserted against the insurer. 794 F.3d at 262. In Rothstein, the plaintiffs alleged that "they were fraudulently overbilled because the rates they were

charged" by their mortgage servicer as reimbursement for FPI "did not reflect secret rebates and kickbacks that [the servicer] received from [the insurance company] through [the company's] affiliate." Id. at 259. The Second Circuit concluded that the claims implicated both the nonjusticiability and nondiscrimination principles, mandating their dismissal. Id. at 263, 266. As to nonjusticiability, the plaintiffs' claims of overbilling effectively asked the Court to determine the reasonableness of the rates approved by state regulators. The Court explained that "whether insurer-provided services should have been reflected in the calculation of [FPI] is not for us to say; under the nonjusticiability principle, the question is reserved exclusively to the regulators." Id. (citing Ark. La. Gas Co., 453 U.S. at 578–79). The claims also offended the nondiscrimination principle because any damages recovered by the plaintiffs "would operate like a rebate to give them a preference over other borrowers who were charged for [FPI]." Id. (quotation marks & alterations omitted).

In Trevathan, Judge Dimitrouleas of this District adopted the reasoning of Rothstein and extended the filed-rate doctrine to claims against lenders or servicers for excess FPI premiums. 2015 WL 6913144, at *3 (S.D. Fla. Nov. 6, 2015). Other courts in the Second Circuit have done the same. See, e.g., Clarizia v. Ocwen Fin. Corp., No. 113CV2907ALCHBP, 2016 WL 439018, at *3 (S.D.N.Y. Feb. 2, 2016) ("[T]he rationale of Rothstein makes clear that the filed rate doctrine bars Plaintiffs' claims against Loan Servicing Defendants . . . "); Lyons, 2016 WL 415165, at *10 ("[T]he logic of [Rothstein] applies to the claims against Loan Servicing Defendants as well.").

Plaintiffs urge the Court to reject Rothstein and adopt the reasoning of the Third Circuit's decision in Alston v. Countrywide Fin. Corp., 585 F.3d 753 (3d Cir. 2009).

Alston held that, for claims under section 8 of the Real Estate Settlement Procedures Act ("RESPA"), it "is absolutely clear that the filed rate doctrine simply does not apply [where the plaintiffs] challenge [the mortgage servicer's] allegedly wrongful conduct, not the reasonableness or propriety of the rate that triggered that conduct." 585 F.3d at 765. District courts within the Third Circuit have extended the logic of Alston to hold that the filed-rate doctrine does not bar claims for kickbacks in FPI and other mortgage contexts. See, e.g., Burroughs v. PHH Mortg. Corp., No. 15-6122 (NLH/KMW), 2016 WL 1389934, at *4 (D.N.J. Apr. 8, 2016) (holding that filed-rate doctrine did not preclude claims for FPI kickbacks); Weiss v. Bank of Am. Corp., No. 15-62, 2015 WL 9304506, at *10 (W.D. Pa. Dec. 22, 2015) (holding that filed-rate doctrine did not preclude claims for "conspiracy to defraud home mortgage borrowers into funding sham captive reinsurance arrangements through illegal kickbacks").

The Court declines Plaintiffs' invitation to follow the Alston line of cases. Alston involved claims under the anti-kickback provisions of RESPA, which created a unique statutory cause of action for persons challenging "any charge" for an "infected" service. Id. at 762–63. Plaintiffs do not bring their inflated-premium claims under any such unique statutory right.

Like Judge Dimitrouleas, the Court instead adopts the rationale of Rothstein and holds that the filed-rate doctrine bars Plaintiffs' claims arising from FPI excess premiums because the rates charged were approved by OIR. The reasonableness of the commissions, reimbursements, reinsurance costs, and services calculated into those rates is a question reserved for the regulators. And Plaintiffs do not allege fraud in the regulatory process. All of Plaintiffs' claims would require the Court to render an

opinion as to the reasonableness of the costs and services bundled into the premiums approved by OIR, which would offend the principle of nonjusticiability. Similarly, a damages award for Plaintiffs would effectively give them a preferential rate over those who paid for FPI from SLS and ASIC but did not participate in the lawsuit, thereby offending the principle of nondiscrimination.

Plaintiffs' arguments challenging the applicability of the filed-rate doctrine are unavailing under the Rothstein framework. First, Plaintiffs maintain that they are challenging SLS and ASIC's conduct in allowing kickbacks, not the rates themselves. But such a distinction "flies in the face of the Rothstein decision, which held that '[a] claim may be barred under the filed rate doctrine even if it can be characterized as challenging something other than the rate itself.'" Lyons, 2016 WL 415165, at *12 (citing Rothstein, 794 F.3d at 262). Second, Rothstein and Trevathan squarely rejected Plaintiffs' argument that they do not challenge the insurance transaction between the insurer and lender/servicer ("A-to-B" transaction), but rather the separate transaction between the lender/servicer and the borrower ("B-to-C" transaction). See Rothstein, 794 F. 3d at 265; Trevathan, 2015 WL 6913144, at *3. As the Second Circuit explained, the FPI "travels invariably 'A-to-B-to-C,'" so the filed-rate doctrine applies even when an intermediary, such as a loan servicer, passes along the filed rate. Rothstein, 794 F. 3d at 265; see Trevathan, 2015 WL 6913144, at *3. Plaintiffs' attempts to discredit the Rothstein Court's understanding of the nature of this relationship are unavailing. Third, Plaintiffs' attempt to distinguish between claims involving "commercial" lines of insurance and "personal" lines is also unpersuasive. See Lyons, 2016 WL 413104, at *13. As the Court in Lyons aptly explained, the nonjusticiability principle is implicated

regardless of whether a commercial or personal line of insurance is involved because, in either scenario, the Court "cannot examine the amount charged for reimbursement to Plaintiffs without considering the reasonableness of the filed." Id. Finally, the types of kickbacks in this action are not unique and do not affect the applicability of the filed-rate doctrine. Although the form of kickbacks in Rothstein was free tracking services, courts have found the filed-rate doctrine equally applicable where the alleged kickbacks were in the form of reinsurance coverage, rebates, commissions, free services, and expense reimbursements included in the filed rate. See id. at *11; Clarizia, 2016 WL 439018, at *2–3; Trevathan, 2015 WL 6913144, at *3.

Because all of Plaintiffs' claims are premised on the allegation that SLS, in collaboration with ASIC, charged borrowers inflated premiums as a result of kickbacks, all counts of the Complaint are barred by the filed-rate doctrine. Accordingly, the Court need not address Defendants' other arguments regarding the sufficiency of Plaintiffs' claims, and the Complaint shall be dismissed with prejudice.

## V. CONCLUSION

For the reasons set forth herein, it is hereby

**ORDERED AND ADJUDGED** that as follows:

1. Defendant American Security Insurance Company's Motion to Dismiss [DE 22] and Defendant Specialized Loan Servicing LLC's Motion to Dismiss Complaint [DE 24] are **GRANTED**.
2. Plaintiffs' Complaint [DE 1] is **DISMISSED with prejudice**.
3. The Clerk of Court is directed to **CLOSE** this case and **DENY as moot** any pending motions.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 25th day of April, 2016.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF